IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| EXFO AMERICA, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:12-CV-201 |
| | § | |
| DAN HERMAN, | § | |
| | § | |
| Defendant. | § | |

### ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR TEMPORARY INJUNCTION

Pending before the court is Plaintiff's motion for temporary injunction (Dkt. #3). On April 30, 2012, the court heard oral argument and received documentary evidence and testimony regarding this motion. For the reasons set forth below, the court concludes that Plaintiff's motion should be **GRANTED IN PART**.

### I. BACKGROUND

In its complaint filed on April 4, 2012, Plaintiff EXFO America, Inc. ("EXFO") seeks to prohibit its former employee, Defendant Dan Herman, from being employed by any company in competition with EXFO, in the product lines in which Herman was involved while employed by EXFO, for a period of six months after the termination of his employment. *See* Dkt. #3 at 8. EXFO further seeks to prohibit Herman from disseminating any of EXFO's confidential information or trade secrets to any person for a period of five years.[1] *Id.* Accordingly, EXFO requests a permanent

---

[1] EXFO's original complaint seeks to prohibit Herman from disseminating any of EXFO's confidential information or trade secrets to any person at any time. *See* Dkt. #3. However, during the hearing before this court on April 30, 2012, EXFO limited this request to a period of five years, in accordance with the terms of Herman's employment agreement. *See id.* at Exh. 1.

-1-

injunction and attorneys fees. *See id*. EXFO also requests a temporary injunction until a permanent injunction can be issued. *See id*.

On April 4, 2012, EXFO obtained a temporary restraining order from the 380th Judicial District Court for Collin County (Dkt. #6-2). After the case was removed to this court, this court extended the temporary restraining order pursuant to Federal Rule of Civil Procedure 65(b)(2). *See* Dkts. #10, #27. During the evidentiary hearing on April 30, 2012, EXFO argued that the court should grant the motion for temporary injunction because Herman's work for EXFO[2] exposed him to knowledge of EXFO's products and customers that makes his use of such knowledge unavoidable while negotiating with customers of Herman's new employer and EXFO's competitor, Spirent Communications ("Spirent"). Herman, on the other hand, argues that the non-competition agreement is unenforceable because it leaves the term "Business" undefined. Herman further argues that an injunction is unnecessary because, as a Spirent employee, he will not sell products that compete with EXFO's products and will not divulge confidential information regarding EXFO.

## II. LEGAL STANDARD

"A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter" pending final disposition of the case. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). To obtain a temporary injunction, the applicant must plead and prove three elements: "(1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim." *Id*.

---

[2] Herman's work for EXFO includes his work while employed by NetHawk, a company acquired by EXFO in March 2010. Herman signed an employment agreement with NetHawk in May 2005. Upon acquisition of NetHawk, EXFO acquired Herman as an employee as well as his employment agreement.

## III. ANALYSIS

Under the first element, Herman argues that EXFO does not have a cause of action against him because the non-competition agreement is unenforceable for lack of definiteness. In pertinent part, the covenant not to compete states that:

> . . . the Employee agrees that during the term of this Agreement and for a period of six (6) months thereafter (the "applicable Period"), the Employee shall not, directly or indirectly, as an employee, Employee, agent, principal, partner, shareholder, corporate officer or director, or in any individual or representative capacity, engage or participate in the Business in the United States. *See* Dkt. #3, Exh. 1, section 6(c).

The covenant further provides that its purpose is to protect all interests of the company with respect to matters contained in section 6(a), the confidentiality clause, which states that:

> "[t]he Employee acknowledges that all information relating to the manufacture, marketing, distribution of {describe products or attach a list as an exhibit} (the "Business") or pertaining to a customer or client of the Company . . . shall be treated as confidential." *See id*. at section 6(a).

Unfortunately, according to the evidence, NetHawk neither added a description of the products to the employment agreement nor did it attach a list of products as an exhibit to the employment agreement. Accordingly, the term "Business" is left largely undefined. It is clear from the language of the employment agreement that "Business" encompasses the manufacturing, marketing, and distribution of products, but the agreement does not specify which products and does not contain an attached list of products. For these reasons, Herman argues that the contract is too indefinite to be enforceable. EXFO, on the other hand, argues that the term "Business" is not "impossible" to define, and the court should interpret it to mean all products that Herman sold on behalf of NetHawk and EXFO.

In Texas, when parties enter into a contract, it is presumed that the partes intend it "to be

-3-

effectual, not nugatory." *Texas Gas Util. Co. v. Barrett*, 460 S.W.2d 409, 412 (Tex. 1970). There are two separate issues that may arise when parties fail to specifically define a contract term, one is indefiniteness and the other is ambiguity. The rule of definiteness requires that "a contract must be sufficiently definite in its terms so that a court can understand what the promisor undertook." *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992). On the other hand, a contract is ambiguous if, after the application of established rules of construction, the agreement is susceptible to more than one reasonable meaning. *DeWitt County Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999). A term "is not ambiguous because of a simple lack of clarity. Nor does an ambiguity arise merely because parties to an agreement proffer different interpretations of a term." *Id*. In this case, the issue is one of definiteness, not one of ambiguity. The question is whether the agreement should fail due to an ill-defined contract term, not whether two or more proffered definitions are reasonable. Accordingly, the court will analyze and interpret the terms of this agreement under the rules of definiteness.

Under Texas law, "[i]f the agreement is so indefinite as to make it impossible for the court to determine the legal obligations of the parties, it is not an enforceable contract." *Shin-Con Development Corp. v. L.P. Investments, Ltd.*, 270 S.W.3d 759, 765 (Tex. Ct. App.—Dallas 2008, pet. denied). The material terms of the contract must be defined with sufficient precision so that the court is assured there was a meeting of the minds between the parties. *See T.O. Stanley Boot Co.*, 847 S.W.2d at 221. "[E]ach contract is considered separately to determine its material terms," and "[i]n determining whether a term is an essential element of a contract, we look at whether a party's rejection of the term could have affected the negotiation of the other terms." *Conner v. Lavaca Hosp. Dist.*, 267 F.3d 426, 433 (5th Cir. 2001) (citing *T.O. Stanley Boot Co.*, 847 S.W.2d at 221). In this

case, the definition of "Business" is essential to the covenant not to compete.  Thus, the court must now determine whether it is possible to interpret the term and define the parties' legal obligations.

"Undefined contractual terms should be interpreted according to common usage, and so doing does not render the contract unenforceable." *Abatement Inc. v. Williams*, 324 S.W.3d 858, 862 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).  It can be the case that "[e]xpressions that at first appear incomplete or uncertain are often readily made clear and plain by the aid of common usage and reasonable implications of fact." *Bendalin v. Delgado*, 406 S.W.2d 897, 900 (Tex. 1966), *rev'd in part on other grounds*, 96 S.W.3d 207 (Tex. 2002).  However, when interpreting the agreement, the court "cannot make [the] contract[] for the parties." *Weitzman v. Steinberg*, 638 S.W.2d 171, 175 (Tex. App.—Dallas 1982, no writ).  Therefore, while the court will look at the terms of the contract and interpret them to give effect to the parties' intent, it will not "rewrite the parties' contract or add to its language under the guise of interpretation." *S. Chemical Corp. v. Celanese, Ltd.*, 2009 WL 3110941, at *2 (Tex. App.—Houston [14th Dist.] Sep. 10, 2009); *see also Weitzman*, 638 S.W.2d at 175.  The court will also ensure that its interpretation does not expand the scope of the written covenant not to compete. *See U-Save Auto Rental of America, Inc. v. Moses*, 80 Fed. App'x 929, 929–30 (5th Cir. 2003).

Here, the agreement discusses the "manufacture, marketing, [and] distribution of {describe products or attach a list as an exhibit}" as the "Business." *See* Dkt. #3, Exh. 1, section 6(a). Interpreting these words according to their common usage, the "Business" is the manufacturing, marketing, and distribution of NetHawk's "products."  Because there is no further specification of the "products" and the agreement contains no attached list of products, the court concludes that the "products" are only those products in existence at the time Herman signed the employment

agreement with NetHawk. Interpreting "products" to mean any additional products not in existence at the time of the contract would require to court to add language and specificity to the agreement, which is beyond its power. "Injunctions must be narrowly drawn and precise," and this court will not interpret the agreement to protect products not specified therein and perhaps not even in existence at the time of the employment agreement. *See Moses*, 80 Fed. App'x at 30. According to the parties and the evidence presented at the temporary injunction hearing, the only relevant product that was in existence at the signing of the employment agreement is the "EAST" platform. *See* Francis Aff. (Dkt. #3, Exh. B), at 5. Therefore, the court finds that the covenant not to compete is enforceable, but only as to those products in existence at the time Herman signed the employment agreement with NetHawk—specifically, the "EAST" platform product.

The court will now turn to the second and third elements that EXFO must prove to obtain a temporary injunction. Under the second element, the court finds that EXFO has established a probable right to the relief it seeks—a permanent injunction. Finally, the court finds that EXFO has also satisfied the third element—probable, irreparable injury. Texas law provides that the breach of a covenant not to compete by a "highly-trained employee" gives rise to a rebuttable presumption of irreparable injury. *In re Electro-Motor, Inc.*, 390 B.R. 859, 870 (Bankr. E.D. Tex. 2008) (citing *Cardinal Hlth. Staffing Network, Inc. v. Bowen*, 106 S.W.3d 230, 236 (Tex. App.—Houston [1st Dist.] 2003, no pet.)). Having heard the proffered testimony at the evidentiary hearing, the court finds that, due to his specialized knowledge of these products, the ongoing client relationships, and the numerous factors affecting sales, EXFO sufficiently proved that Herman's breach of the covenant not to compete would result in imminent, irreparable harm.

## IV. CONCLUSION

For the reasons stated, the court concludes that the covenant not to compete is enforceable with respect to the "EAST" platform product. The court also concludes that EXFO has demonstrated a probable right to recovery, as well as irreparable harm should Herman breach the covenant not to compete. The court also concludes that the time, geographic area, and scope of activity set forth in the employment agreement, as interpreted by the court, are reasonable. Therefore, the court **GRANTS IN PART** the motion for temporary injunction.

Dan Herman shall not, for a period of six months beginning March 30, 2012, manufacture, market, or distribute any products in competition with EXFO's "EAST" product in the United States. Further, Herman shall not, for a period of five years beginning March 30, 2012, disclose or use any confidential or proprietary information pertaining to a customer or client of EXFO anywhere, including EXFO's product prices, pricing strategy, "road maps" for future product development, approved vendor lists of customers, business strategy, and customer contact information.

IT IS SO ORDERED.

**SIGNED this the 10th day of May, 2012.**

_____
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE